UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MICHAEL SAUNDERS, on behalf of himself and all
others similarly situated,

                    *Plaintiff,*

    v.

WITH YOU E-COMMERCE, LLC, d/b/a
JESSICASIMPSON.COM,

                    *Defendant.*
----------------------------------------------------------------X

**24 Civ. 00111**

**CLASS ACTION
COMPLAINT**

**JURY TRIAL
DEMANDED**

**ECF CASE**

Plaintiff, MICHAEL SAUNDERS ("Plaintiff" or "Mr. Saunders"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their class action complaint against Defendant, WITH YOU E-COMMERCE, LLC, d/b/a JESSICASIMPSON.COM ("Defendant"), hereby alleges the following:

**INTRODUCTION**

1.    Plaintiff, MICHAEL SAUNDERS, is a visually-impaired and legally blind person who requires screen-reading software to discern website content while using the computer. (Ex. A – Michael Saunder's Medical Report, dated Oct. 3, 2022) Plaintiff uses the terms "blind" or "visually-impaired," as Plaintiff's central visual acuity with correction is less than or equal to 20/200.

2.    Defendant, WITH YOU E- COMMERCE, LLC, d/b/a JESSICASIMPSON.COM, is a California corporation, and provides to the public a Website, https://www.jessicasimpson.com (the "Website" or "Defendant's Website"), which offers consumers access to the, "Jessica Simpson Collection" consisting of, "31 product categories including footwear, apparel, fragrance, fashion accessories, maternity apparel, girls' clothing, and

1

a home-line." *See* https://fashionunited.ca/business/sequential-buys-1-billion-jessica-simpson-brand/20150409323 (last visited November 27, 2023) ,

3.      Plaintiff brings this civil action against Defendant for their failure to design, construct, maintain, and operate Defendant's Website, https://www.jessicasimpson.com (the "Website"), to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to the Website, and therefore denial of the goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

4.      Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired,[1] including 2.0 million who are blind. According to a 2016 report published by the National Federation of the Blind, 2016 report, approximately 418,500 visually impaired persons live in the State of New York.[2]

5.      Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York City law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

6.      Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant is in violation of the ADA. Plaintiff now seeks a permanent

---

[1] *See* United States Census Bureau Report.

[2] *See* 2016 National Federation of the Blind Report.

injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

8.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL").

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c), in that Defendant conducts and continues to conduct a substantial and significant amount of business in this District, via the internet and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on a number of occasions, the subject Website within this judicial District.

10.     Defendant is a California corporation with its principal offices located at 14556 Ventura Blvd., Sherman Oaks, California 91403, and is subject to personal jurisdiction in this District because Defendant purposefully targets and otherwise solicits business from New York State residents through its highly interactive Website, https://www.jessicasimpson.com.

11.     Defendant has been and is committing the acts or omissions alleged herein, in the Southern District of New York, that caused injury and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District on several separate occasions.

12.     Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Bronx County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing the Defendant's Website in the future. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access a website. [3]

13.     The United States Department of Justice Civil Rights Division has recently issued that, "[t]he Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web." (*See* Guidance on Web Accessibility and the ADA)

14.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## **THE PARTIES**

15.     Plaintiff, MICHAEL SAUNDERS, at all relevant times, was and is a resident of 764 Tinton Avenue, Apt. 2A, Bronx, New York, 10456.

16.     Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, and NYCHRL. Plaintiff is unable to utilize a computer or device without the assistance of screen-reading software, such as Nonvisual Desktop Access or "NVDA."

---

[3] *See, e.g. Chloe NA v. Queen Bee of Beverly Hills, LLC.,* 616 F.3d 158 (2d Cir. 2010*); Reed v. 1-800-Flowers.com, Inc.,* 327 F.Supp.3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials*, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S.Ct. 1017 (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products there.).

17.     Upon information and belief, Defendant, WITH YOU E-COMMERCE, LLC, d/b/a JESSICASIMPSON.COM,  is a California corporation, whose principal office is located at 14556 Ventura Blvd., Sherman Oaks, California 91403, and provides to the public a Website, which offers   consumers access to the product line designed by Jessica Simpson called "The Jessica Simpson Collection," consisting of "31 product categories including, but not limited by footwear, apparel, fragrance, fashion accessories, maternity apparel, girls' clothing, and a home line," amongst other links to "Health & Wellness, Crafts With Kids, Fashion & Style, Charity, News, Parenting, Travel," and a vast amount of other information within their eCommerce platform." https://www.jessicasimpson.com/blogs/jessicasworld (last accessed November 27, 2023)

18.     Defendant's Website, and the goods, and services offered thereupon, is a "public accommodation" within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(j). *See Andrews v. Blick Art Materials, LLC*, 268 F.Supp.3d 381 (E.D.N.Y. 2017); *Romero v. 88 Acres Foods, Inc.,* 580 F.Supp.3d 9 (S.D.N.Y. 2022).

## **NATURE OF ACTION**

19.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

20.      In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen reading software, blind, and visually-impaired

persons are unable to fully access websites, and the information, products, goods and contained thereon.

21.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately, such as the popular screen-reading software program for a Windows computer, Nonvisual Desktop Access or "NVDA."

22.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

23.     The International Website Standards Organization, the World Wide Web Consortium, known throughout the World as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

24.     Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

      a.     A text equivalent for every non-text element is not provided;

      b.     Title frames with text are not provided for identification and navigation;

      c.     Equivalent text is not provided when using scripts;

d.      Forms with the same information and functionality as for sighted persons are not provided;

e.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.      Web pages do not have titles that describe the topic or purpose;

i.      The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDF); and

q.      The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

25.     Websites have features and content that are modified on a daily, and in some instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STANDING

26.     Plaintiff, MICHAEL SAUNDERS, is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL. For  Plaintiff to access the internet, he must utilize a computer which contains a screen-reader, such as "NVDA for Windows."

27.     Screen reader "software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017) (J. Weinstein).

> The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.

> The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link says the word "clickable."…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and

responding with her keyboard.

*Id.*; *see also* American Federation for the Blind, Screen Readers, https://www.afb.org/blindness-and-low-vision/using-technology/assistive-technolog-products/screen-readers (last visited November 27, 2023) (discussing screen readers and how they work).

28.   Consumers such as Plaintiff may purchase Defendant's products and access other brand-related content and services on the Website, https://www.jessicasimpson.com, Defendant owns, operates, and controls.

29.   In addition to researching and purchasing Defendant's products and services, consumers may also use Defendant's Website in order to gain access to "Jessica's World," learning about "Becoming a Collaborator," "Joining the Influencer Program," and reading "Jessica's Open Book, where Jessica reveals for the first time her inner monologue and most intimate struggles." *See* https:www.jessicasimpson.com/open-book – Jessica Simpson (last accessed November 27, 2023)

30.   Plaintiff was injured when attempting to access Defendant's Website on November 10, 2023, and again on November 14, 2023, from his home in Bronx County, in an effort to shop for Christmas presents from Defendant's E-Commerce Platform, as he encountered various access barriers that denied him full and equal access to Defendant's online goods, content, and services.

31.   For instance, Plaintiff had been interested in obtaining various affordable, yet stylish, Christmas gifts for family and close friends, each for under $55.00, including the cost of shipping. Plaintiff's Internet search revealed that Defendant was offering various items on sale for the Holiday Season, including the "Geometric Metal J.S. Sunglasses in Gold & Nude, regularly $55.00 but on Sale for $40.00." *See* https://www.jessicasimpson.com/collections/accessories. (last accessed November 27, 2023)

32.     On November 10, 2023, while using NVDA, Plaintiff accessed Defendant's Home-Page, https://www.jessicasimpson.com, and searched for a link to "Accessories" and "Sale."

33.     This section of the Website contains a host of products, including the desired sunglasses, watches, and pendants, each offered on sale. Each item had its own "Product Tile" or "Product Card," which is a separate area that displays the products image, name, price, and other relevant information. Each Product Tile is designed to be visually appealing and informative, making it easier for users to browse through the products and make informed decisions. The Product Tiles are usually arranged in a grid format, with each tile occupying a fixed amount of space on the webpage.

34.     Plaintiff attempted to scroll through this section in order to discern information about each item displayed therein, including the desired, "Geometric Metal J.S. Sunglasses in Gold & Nude." For instance, Plaintiff wanted to know what each item was made from, the available styles, colors, and pricing. However, Plaintiff was unable to effectively navigate through this section of the Website because many of the images displayed therein lacked "Alternative Text," ("Alt. Text") or descriptive elements, preventing Plaintiff's understanding of the webpage content. (Ex. B. Wave Accessibility Evaluation Tool, indicating 442 Errors)

35.     Moreover, this section of the Website contains a multitude of "Empty Links," absent text. [4] (Ex. C. – Wave Report, indicating 620 X Empty Links) For instance, Plaintiff's search had revealed that the Defendant also sold "Metal Aviator J.S. Sunglasses in Smoke Matte Black," and wanted to visualize this product prior to its purchase. However, when attempting to access desired information, Plaintiff was unable to discern anything other than what was presented

---

[4] Essentially, anything that takes the user to another page or another section of the same page when clicked is a link, including items in the user's navigation menu, social media icons that open a sharing dialogue or open the user's social media profile, and even the "buttons" the user may add throughout their content

within the Product Tile, useful to sighted individuals only. Thus, on the first occasion, Plaintiff was unable to complete his search for the desired gifts because of the omitted information.

36.     On November 14, 2023, Plaintiff returned to the Website in order to determine whether the Defendant had corrected its deficiencies by including, for instance, mandatory descriptive elements of those items offered on sale. Yet despite Plaintiff's use of the screen reader, he was unable to determine whether those items offered on sale met his requirements. As a result, the Plaintiff did not complete his navigation and purchase of the desired products.

37.     Below is one example of an online store's use of sufficiently descriptive alternative text to describe its products to screen readers users. **<u>Custom Ink</u>** (Home Page, https://www.customink.com) (last accessed November 28, 2023). The image below illustrates what shoppers hear when browsing Custom Ink's online store with a screen reader. To the right, is an image with alternative text, highlighted in green, which reads: "One burlap and cotton tote bag with a custom printed architectural company logo." Although invisible on the screen, screen reader auxiliary aids read this highlighted text aloud in order to describe Custom Ink's products to shoppers who cannot see. Without this detailed alternative text, screen reader users cannot determine what goods and services are available for purchase; they cannot shop online independently.



38.     Unfortunately, as a result of visiting Defendant's Website from his home, and from investigations into the accessibility of Defendant's Website performed on his behalf by counsel, Plaintiff is aware that significant portions of Defendant's Website are unusable, due to various barriers that deny his full and equal access to Defendant's online services.

39.     On December 25, 2023, Plaintiff's counsel conducted an accessibility audit using Web Accessibility Evaluation Tool, ("WAVE"), by WebAim. This web crawler confirmed the presence of multiple violations of the ADA, as reflected within the completion of said audit. (*See* Exhibit B) (WAVE Report, dated December 25, 2023). For example:

a.      A review of the Report indicates that there were 474 Types of Errors (or Access Barriers) within the Home-Page section of the Website, including but not limited to, "missing alternative text" from various images, labels, and headings, which in the conjunctive prevented Plaintiff from navigating and discerning important details of the desired products. (*See* Ex. B)

b.      In addition, Plaintiff came across several interesting sections of the Website, such as the "Holiday Shop" section, in which the audit revealed

743 Types of Errors**,** including "116 Empty Form Labels," and "620 Empty Links." These types of barriers are especially confusing for Plaintiff because the omitted text resulted in additional navigation and repetition when using a screen reader. (*See* Ex. C)

c.    Moreover, when Plaintiff attempted to register for an Account in order to establish a necessary Profile, the relevant section of the Website required Plaintiff to use a mouse in order to enter the requested personal information within the appropriate zones. However, it is axiomatic that a sight-impaired individual cannot use such a visual device because they cannot discern where on a particular screen the stylus is pointing. Thus, Plaintiff was unable to complete the purchase process of the desired items.

40.    Further, on December 25, 2023, Plaintiff's counsel conducted an alternative audit using SortSite Accessibility Evaluation Tool by PowerMapper ("SortSite"). This audit confirmed and corroborated the Wave Accessibility audit, revealing numerous Priority I and Level 'A' Issues, such as "Broken Links" and lack of "Alt. Text" (*See* Ex's. D & E) (Broken Link Report, & Accessibility Evaluation Report, dated December 25, 2023).

41.    Due to the aforementioned (and other) access barriers, which prevented Plaintiff from discerning crucial information about the desired products, Plaintiff was unable to complete his search and purchase the items that he wanted to buy.

42.    The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by removing these and all existing access barriers. Plaintiff has been, and in absence of an injunction, will continue to be, injured by Defendant's failure to provide the online content and services in a manner that is compatible with screen reader technology.

43.    Defendant's denial of full and equal access to and enjoyment of the goods, benefits, and services of the Website, has caused Plaintiff to suffer an injury in fact due to Plaintiff's inability to purchase the desired items, which is a concrete and particularized injury, and is a direct result of Defendant's conduct.

44.     Despite this direct harm and frustration, Plaintiff intends to access the Website in the future to purchase the desired Jessica Simpson products because they cannot be legally purchased elsewhere on the Internet. Instead of purchasing these items as Christmas gifts, Plaintiff intends to purchase them as birthday gifts and/or gifts for other special occasions.

45.     Although there are alternative companies that may sell similar products, Plaintiff's research revealed that Defendant's Website is the one and only place where authentic Jessica Simpson products can be lawfully purchased.

46.     Through Plaintiff's attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

47.     Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited, to the following policies or practices:

        r.      Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

        s.      Failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and

        t.      Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

48.     Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

49.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

50.     Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

u.     Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

v.     Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

w.     Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.1 guidelines; and

x.     Develop an accessibility policy that is clearly disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

51.     Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

52.     According to information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from their online platform. These amounts are far greater than the associated cost of making Defendant's Website equally accessible to visually impaired customers. Without injunctive relief, Plaintiff and other visually-impaired consumers will be unable to independently utilize the Website in a meaningful manner.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

54.     Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered, during the relevant statutory period.

55.     Common questions of law and fact exist amongst the Class, including:

y.      Whether Defendant's Website is a "public accommodation" under the ADA;

z.      Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

aa.     Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and

bb.     Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to

people with visual disabilities, violating the NYCHRL.

56.     Plaintiff's claims are typical of the Class. The Class, similar to Plaintiff, are severely visually impaired or otherwise blind individuals, and claim that Defendant has violated the ADA or NYCHRL by failing to update or remove access barriers on the Website so either can be independently accessible to the Class.

57.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who are competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

58.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

59.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

60.     Moreover, judicial economy will be served maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

61.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

62.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

63.     Defendant's Website is a "public accommodation" within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

64.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

65.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

66.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally

alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

67.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

68.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION
### (Violations of the NYCHRL)

69.     Plaintiff, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

70.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions,

of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

71.     Defendant's Website is a "public accommodation" within the definition of N.Y.C. Admin. Code § 8-102(9).

72.     Defendant is subject to NYCHRL because it owns and operates the Website, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

73.     Defendant is in violation of N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to their Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

74.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide  a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

75.     Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

> cc.     constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

> dd.     constructed and maintained a website that is sufficiently intuitive  and/or obvious that is inaccessible to blind class members; and/or

> ee.     failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

76.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

77.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

78.     Defendant's actions were and are in violation of the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

79.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

80.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

81.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
### (Declaratory Relief)

82.     Plaintiff, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

84.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.     An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.     Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and Subclasses for violations of civil rights under New York City Human Rights Law and City Law;

f.      Pre-judgment and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact

the Complaint raises.

Dated: New York, New York
        January 5, 2023

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

Jon L. Norinsberg, Esq.
Bennitta L. Joseph, Esq.
*Attorneys for Plaintiff*
110 East 59th Street, Suite 2300
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
jon@norinsberglaw.com
bennitta@employeejustice.com